IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GLADSTONE CAPITAL CORPORATION, a Maryland Corporation,<br><br>             Plaintiff,<br><br>   vs.<br><br>SPIRIT OF ALASKA BROADCASTING, f/k/n KMBQ CORPORATION, an Alaska Corporation, and JOHN N. KLAPPERICH,<br><br>             Defendants. | Case No. 3:10-cv-0146-TMB<br><br><br>**O R D E R**<br>**re Pending Motions** |

## I.  INTRODUCTION

Before the Court are three related pending motions. The first is a Motion for Approval of Additional Borrowing by Receiver Robert Woodward at Docket 75. That motion seeks leave of this Court for Defendant Spirit of Alaska Broadcasting, Inc. ("SABI") to borrow up to $160,000 in additional funds from Plaintiff Gladstone Capital Corporation ("Gladstone"). The second is a Motion for Approval of Termination of Existing Tenancies and Entry into New Lease by Woodward at Docket 77. The third is a Motion to Compel Receiver, or in the Alternative, to Terminate Receivership at Docket 80 by Wells Fargo Bank, N.A. ("Wells Fargo"), which is a creditor of SABI. All

of the motions are opposed, have been fully briefed, and are ripe for decision. Because these motions raise related legal issues, the Court will address all of them in this Order. For the reasons outlined below, Woodward's Motions at **Dockets 75** and **77** are **GRANTED** and Wells Fargo's Motion at **Docket 80** is **DENIED.**

## II. BACKGROUND

This action was originally brought by Gladstone on July 2, 2010. The suit was brought after SABI defaulted on over $2 million in secured loans from Gladstone.[1] The principal relief sought by Gladstone was the appointment of a receiver for SABI and its assets, as provided for in the original loan agreement.[2] The Court granted Gladstone's requested relief on July 26, 2010, appointing Woodward as Receiver.[3]

Wells Fargo holds a secured line of credit to SABI totaling over $37,000, on which SABI has also defaulted.[4] The line of credit is secured by property located at 2200 E. Parks Highway in Wasilla, Alaska. <u>Id.</u> SABI has offices located on the property.[5] Due to

---

[1] Dkt. 1 at 6.

[2] Dkt. 1 at 8.

[3] Dkt. 50.

[4] Dkt. 81 at 2.

[5] Dkt. 81 at 2-3.

SABI's default, Wells Fargo has entered into foreclosure proceedings against the property and the foreclosure sale is currently scheduled for November 9, 2010.[6] The property is not among the receivership assets administered by Woodward. SABI has not made any payments on Wells Fargo's loan since Woodward's appointment as Receiver.

The 2200 E. Parks Highway property which secures Wells Fargo's line of credit is actually owned by Defendant John Klappernich, who is the principal owner of SABI.[7] SABI currently pays $7,500 per month in base rent on the property, along with utilities, insurance, and property taxes which average thousands of dollars per month.[8] SABI also is party to a month-to-month lease for broadcasting space in Anchorage which costs approximately $3,500 in rent and utilities.[9] Woodward's motion at Docket 77 originally sought to terminate both of these leases in favor of a single leased space in Wasilla which would cost approximately $8,000 per month total, although he has since modified that request as the Court will discuss below.

---

[6] Dkt. 81 at 3.

[7] Dkt. 78 at 2.

[8] *Id.*

[9] *Id.*

Woodward's request for additional borrowing is premised on the need for operating funds not only to continue business operations, but also to facilitate the move in facilities. Gladstone has expressed its willingness to extend the additional credit so long as Gladstone resumes interest payments on the original loan.[10] Woodward has indicated that SABI would be able to meet this condition.[11]

### III. DISCUSSION

As noted in Judge Holland's Order at Docket 50, it is Washington receivership law which applies in this case. The Court begins its analysis by pointing out that its power to appoint a receiver and to subsequently supervise the actions of the receiver is an equitable power, "exercised in aid of its jurisdiction, in order to enable it to accomplish, as far as possible, complete justice between the parties before it."[12] Therefore, the Court's primary concern is to do justice to those who are currently parties in this litigation.

---

[10] Dkt. 89.

[11] Dkt. 100, Ex 1 at 4-5.

[12] *Clebanck v. Neely*, 1 P.2d 239, 240 (Wash., 1931) (citing *Washington Iron-Works Co. v. Jensen*, 3 Wash. 584, 28 P. 1019 (Wash. 1892).

This concern was reflected in Judge Holland's Order, in which he noted that SABI "is surely worth much more to plaintiff and defendants as a going business than are the separate assets which are subject to foreclosure."[13] Thus, Judge Holland appointed a receiver on the basis of R.C.W. § 7.60.025(1)(a), which allows appointment of a receiver when a "party is determined to have a probable right to or interest in property that is a subject of the action" and "its revenue-producing potential is in danger of being lost or materially injured or impaired." The grounds for Wells Fargo's motion to compel or terminate the receivership are basically identical to the grounds for its opposition to Woodward's motion for additional borrowing. Wells Fargo alleges that SABI continues to lose money, and that the receivership therefore does not serve any useful purpose. Wells Fargo also claims that the receivership "violates Alaska public policy" because "an Alaska creditor's rights" cannot be "overridden by another State's laws." In other words, the terms of an receivership governed by Washington state laws cannot affect the legal rights of a creditor whose loans were made under Alaska law.

On a related note, Wells Fargo argues that "Gladstone should not be entitled to preferential treatment by having interest paid

---

[13] Dkt. 50 at 5.

on its pre-existing loans while other lenders (like Wells Fargo) are not being paid interest."[14] This is why Wells Fargo requests the alternative relief of compelling SABI to resume interest payments to Wells Fargo, on the premise that if interest payments are to be made to any one creditor, they must be made to all creditors.

Plainly, if Wells Fargo's arguments in favor of terminating the receivership are correct, then Woodward's requests for permission to terminate leases and borrow additional funds are moot. In fact, it is impossible to separate the question of whether the receivership should continue from the question of whether SABI should be permitted to borrow additional funds, since SABI is unlikely to be able to continue operations without further credit. In order to rule on the currently pending motions, the Court must answer three questions: 1) Whether continuation of the receivership, along with the resumption of interest payments to Gladstone, violates Alaska law or public policy; 2) Whether the Court should exercise its equitable power to permit SABI to borrow additional funds from Gladstone, and 3) Whether the Court should exercise its equitable power to permit SABI to terminate its present leases.

---

[14] Dkt. 91 at 3.

**A. The Continuation of the Receivership and Proposed Resumption of Interest Payments to Gladstone Does not Violate Alaska Law or Public Policy**

Wells Fargo claims that its rights as an Alaska creditor are prejudiced by continuation of the receivership because it would allegedly subject Wells Fargo's legal rights to Washington law. Such a result would contradict the terms of Wells Fargo's loan agreement with SABI, which is governed by Alaska law. Moreover, it would extend the jurisdiction of Washington's laws beyond their legal limits. As an example of the effect of the receivership on its rights as a creditor, Wells Fargo notes that "Alaska does not recognize any 'automatic 60 day stay' on creditors taking action to collect debts as is provided for in the Washington statutes."[15] Wells Fargo also points out that "Alaska has no provision comparable to Washington's priority statute, RCW 7.60.230."[16]

The continuation of the receivership does not affect Wells Fargo's rights as a creditor. First, the Court notes that this proceeding has no effect on Wells Fargo's legal right to foreclose on the property at 2200 Parks Highway. That property is not included in the receivership assets, and the appointment of a receiver clearly has not hindered Wells Fargo's plans for a

---

[15] Dkt. 81 at 10 (citing RCW 7.60.110).

[16] Dkt. 81 at 10.

November 9, 2010, foreclosure sale. Neither the "60 day stay" provision nor Washington's priority statute will be allowed to extinguish or diminish Wells Fargo's right to repayment nor limit the remedies already available to it.

Only by construing all of Woodward's decisions as rulings of the Court, including his decision not to resume payment on the Wells Fargo loan, can Wells Fargo plausibly argue that its legal rights are affected by this receivership. But the Court must distinguish between those actions which are ordered by the Court based on the law and the purely economic decisions made by Woodward. It is important to note that it was not the receiver, Mr. Woodward, who initially ceased payments on Wells Fargo's line of credit. SABI defaulted on its Wells Fargo loan before this case was ever filed, because there simply were not sufficient funds to make payments to any of SABI's creditors or vendors.

Woodward's decision to continue non-payment of the Wells Fargo loan is not a judicial determination that Wells Fargo has no right to reimbursement. Nor is it a determination that Gladstone's claims to repayment are superior to Wells Fargo's under Washington law. Rather, the Receiver has made a business decision which is intended to maximize value for SABI and all of its creditors. The principal consequence of non-payment on Wells Fargo's loan is foreclosure of the property at 2200 Parks Highway. But SABI is not the owner of

that property; John Klappernich is. Thus, the loss of that property to foreclosure has no effect on SABI's bottom line, while the payment of interest to Wells Fargo would deplete the receivership assets.

By contrast, back payments to SABI's vendors are necessary to continue business operations for SABI. Those payments will not be possible unless SABI has access to further credit. At the moment, Gladstone is the only creditor willing to extend credit to SABI. Gladstone is not obligated to extend this additional credit. Its request for resumption of interest payments is a rational calculation based on the additional risk it assumes by lending further funds to SABI. Woodward believes that the resumption of interest payments is a reasonable price to pay in order to keep SABI in business. Again, this decision represents Woodward's best business judgment. It should not be viewed as an adjudication of the relative superiority of Wells Fargo's and Gladstone's claims to repayment. If Wells Fargo, instead of Gladstone, had been willing to extend additional credit in exchange for renewed interest payments, then Woodward doubtless would have asked permission to resume payments to Wells Fargo.

In summary, Woodward's actions do not represent the triumph of Washington state law over Wells Fargo's interests. They are business decisions required by SABI's difficult financial straits.

Thus, there is no conflict of Washington and Alaska law which requires the Court to terminate the receivership. Whether the Court ought to do so based on equitable principles is a question answered below.

    **B. Continuation of the Receivership and Approval of Woodward's Request for Additional Borrowing is the Most Equitable Result**

The extension of additional credit is necessary to SABI's continued operation as a "going concern." However, Wells Fargo claims that "[s]imple fairness requires" that interest be paid to all creditors if it is paid to any creditors.[17] But this argument ignores the fact that payment to all creditors is impossible, as even Wells Fargo acknowledges.[18] As noted above, SABI defaulted on its debt with Wells Fargo before this action was ever filed. In the absence of any action by this Court, it is exceedingly unlikely that SABI would have been able to resume payments. In essence, by asking for an order to compel SABI to resume interest payments on its Wells Fargo loan while in receivership, Wells Fargo is asking to be put in a better position than it would have been if no receiver had been appointed.

---

[17] Dkt. 91 at 3.

[18] Dkt. 91 at 2 ("If just a portion of the accounts payable were satisfied in the ordinary course, the business would be unable to continue.").

The Court's determination of "fairness" is thus limited to two choices: to terminate the receivership and allow liquidation of SABI's assets, or to continue the receivership in the hope that far more creditors of SABI will be made whole as it is restored to profitability. The Court agrees with Judge Holland that the most equitable outcome is one that maximizes value for as many parties as possible.

Wells Fargo cites *Great Northern Ry. Co. v. Oakley*, 135 Wash. 279, 237 P. 990 (Wash. 1925) for the proposition that "interest is not allowed to members of a class in receivership if the class fund is not sufficient to allow interest to all."[19] If Gladstone were simply seeking to have its prior loan repaid, to the exclusion of all other creditors, then this equitable maxim would apply. However, Gladstone is offering a service in exchange for the renewed interest payments, namely, the extension of further credit. In this sense, Gladstone is no different from any of SABI's other vendors whose continued service is necessary to the continued survival of SABI. The receiver has not simply chosen to arbitrarily reimburse one creditor over another. The Washington Supreme Court's equitable concern for unjust allocation of payments between creditors is not implicated in this case.

---

[19] *Great Northern* at 993.

The Court also disagrees with Wells Fargo that "[t]he Receiver is not carrying out the business in the ordinary course" because "he is not paying the expenses of the business" and "is not acting to honor the business's contracts to preserve the business's assets."[20] The Court has already discussed the business rationale behind Woodward's decision not to redeem a mortgage that is not even secured with SABI's own assets. Although it is never ideal for a debtor to default on a mortgage, there are instances in which it is the soundest business course. The Court is persuaded that this is one such case.

The Court is also unpersuaded by Klappernich's opposition, in which he argues that Woodward has failed to specify how he plans to use the additional funds. Woodward has said he will use the money to pay vendors and to effectuate the proposed change in rental facilities. Moreover, he has asserted that he will only borrow as much of the $160,000 as necessary for these purposes.

SABI's continued operation is in the best interest of most if not all of the parties concerned. The Court finds that the payment of interest to Gladstone in order to facilitate additional borrowing does not violate any equitable principles. The Court will

---

[20] Dkt. 81 at 6.

therefore allow the additional borrowing on the terms set forth by Woodward and Gladstone.

### C. The Proposed Termination of Leases is in the Best Interest of SABI and its Creditors

Klappernich is the only party opposed to the proposed termination of leases as set forth by the Motion at Docket 77. Klappernich argues that, rather than consolidate the Anchorage and Wasilla studios into a different Wasilla property, SABI should keep its Anchorage studio and continue its residence at its current Wasilla studio at a reduced rent.[21] Since Klappernich is the owner of the current Wasilla studio, he is able to offer such a rent reduction, although he acknowledges that the total costs at his property would still be $1,500 per month higher than at the proposed new studio.[22]

In Woodward's reply, he informs the Court that he has negotiated a new rental rate at the Anchorage studio, from $2,065 per month to $685.[23] Thus he withdraws his request to terminate the Anchorage lease. As for the Wasilla space, Woodward notes that Klappernich will likely not be the owner of that property for much longer, and therefore cannot guarantee that the rental rate will

---

[21] Dkt. 94 at 2.

[22] Id.

[23] Dkt. 101 at 2.

continue beyond a few months. The Court agrees. Woodward's request to terminate the existing lease at the Wasilla property is in the best interest of SABI.

## V. CONCLUSION

Woodward's proposals to have SABI borrow additional funds from Gladstone and terminate its Wasilla lease are in the best business interest of SABI and in the interest of justice for SABI and its creditors. Continuation of the receivership on these terms does not affect Wells Fargo's legal right to recover on its loan to SABI, including its right to foreclose on the Wasilla property. Therefore, there is no provision of Alaska law or public policy which prohibits the receivership or the proposed actions. For the foregoing reasons, the Court **GRANTS** Woodward's Motions at **Dockets 75** and **77** and **DENIES** Wells Fargo's Motion at Docket **80.**

ENTERED this 25th day of October, 2010.

S/TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE